# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COREY BRACEY** | **CIVIL ACTION** |
| *Plaintiff, pro se* | |
| | **NO. 17-2836** |
| v. | |
| | |
| **SUPERINTENDENT LINK, et al.** | |
| *Defendants* | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                                          JANUARY 16, 2019

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Corey Bracey ("Plaintiff"), an inmate currently confined at the Pennsylvania State Correctional Institution at Rockview, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 ("§ 1983"), in which he alleges that several employees of the Pennsylvania State Correctional Institution at Graterford ("SCI Graterford") violated his rights under the First, Eighth, and Fourteenth Amendments of the United States Constitution while he was confined in the SCI Graterford's Diversionary Treatment Unit ("DTU"). In his amended complaint, Plaintiff seeks declaratory relief, as well as compensatory, punitive, and/or nominal damages.

Before this Court is a *partial motion to dismiss*,[1] filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) by Defendants Superintendent Cynthia Link ("Link"); Deputy of Centralized Services Banta ("Banta"); Deputy of Facility Management Brumfield ("Brumfield"); PREA Compliance Manager Joe Terra ("Terra"); Major of Guards Flaime ("Flaime"); DTU Manager Nuñez ("Nuñez"); Correctional Officer ("CO") I Choi ("Choi"); CO I Baratta[2]

---

[1] Though Defendants titled their motion as a *partial* motion to dismiss, Defendants move to dismiss Plaintiff's entire amended complaint.

[2] Though Plaintiff's amended complaint names Corrections Officer ("CO") "Barretta" as a Defendant, Plaintiff commonly refers to this party as "Barratta," and Defendants indicate in their memorandum of law in support of the instant motion that they believe this party's last name is Baratta. [*See*

("Baratta"); CO I Andrews ("Andrews"); and CO II Myers ("Myers") (collectively, "Defendants"),[3] which seeks the dismissal of Plaintiff's amended complaint for failure to state a claim. [ECF 19]. Plaintiff has opposed the motion. [ECF 25]. The issues raised in the partial motion to dismiss have been fully briefed by the parties and are now ripe for disposition.[4]

For the reasons set forth, Defendants' motion is granted, *in part*, and denied, *in part*.

## BACKGROUND

In his amended complaint,[5] Plaintiff asserts § 1983 claims against Defendants for alleged violations of his First, Eighth, and Fourteenth Amendment constitutional rights. Specifically, Plaintiff asserts that Defendants (1) disregarded several situations that raised substantial risks of

---

ECF 19 at 1, n.1]. This Court accepts Defendants' representation and, hereafter, will refer to this Defendant as Baratta.

[3] Defendants are identified by the position they are alleged to have held during all times relevant to this civil action. It is not known whether they currently hold these positions.

[4] On March 16, 2018, Defendants filed a *reply memorandum in further support* of their motion to dismiss, without first seeking leave to do so. [ECF 26]. Plaintiff subsequently filed an *objection to Defendants' supplemental motion to dismiss*, apparently in response to Defendants' reply, in which Plaintiff cites, *inter alia*, Defendants' failure to seek leave of court to file a reply. [ECF 27]. The Local Rules of Civil Procedure provide for the filing of responses to motions but are silent with respect to subsequent replies. In light of Plaintiff's objection and Defendants' failure to seek leave prior to filing their reply, this Court did not consider Defendants' reply in ruling on the motion to dismiss.

[5] On June 22, 2017, Plaintiff, proceeding *pro se*, filed an application to proceed *in forma pauperis* in this matter, together with a complaint in which he and co-plaintiffs Christopher Gilchrist ("Gilchrist") and Black & Pink asserted civil rights claims under 42 U.S.C. § 1983 against Defendants. [ECF 1]. Plaintiff, however, was the only person who signed the complaint. Therefore, pursuant to Rule 11's requirement that "every pleading" be signed "by a party personally if the party is unrepresented," co-plaintiffs Gilchrist and Black & Pink were dismissed as parties to this action on June 27, 2017. [ECF 2]. Plaintiff's application to proceed *in forma pauperis* was later granted and the complaint was refiled on August 2, 2017, on his own behalf. [ECF 5, 6]. On October 2, 2017, Defendants moved to dismiss the complaint, [ECF 11], and on October 24, 2017, Plaintiff moved to amend his complaint. [ECF 14]. On October 25, 2017, Plaintiff's motion to amend the complaint was granted, Defendants' motion to dismiss was denied as moot, and Plaintiff's amended complaint was deemed filed. [ECF 15, 16, 17]. On November 16, 2017, Defendants filed the instant *motion to dismiss*. [ECF 19].

2

harm to Plaintiff; (2) retaliated against Plaintiff for engaging in constitutionally-protected activities; (3) interfered with Plaintiff's mail so as to subject Plaintiff to harassment by other hostile inmates; (4) failed to train, supervise, and/or properly assign staff to the DTU such that Plaintiff was placed at risk; and (5) permitted and/or condoned these violations in a supervisory capacity. [ECF 17]. In the motion to dismiss, Defendants argue that Plaintiff has failed to plead sufficient facts in the amended complaint to support his claims of constitutional violations.

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in Plaintiff's amended complaint and construe the facts alleged in the light most favorable to Plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Briefly, the assertions in the amended complaint are as follows:

> At all relevant times, Plaintiff was an inmate at SCI Graterford, housed in the DTU, a "designed unit for seriously mentally ill inmates who have received institutional misconduct reports, but need mental health intervention and treatment provided by trained professionals in an in-patient secure setting." (Am. Compl. ¶ 2). Defendants Choi, Baratta, and Andrews were correctional officers regularly assigned to the DTU, and Defendant Myers was a sergeant regularly assigned to the DTU. (*Id.* at ¶¶ 10-13).
>
> On November 17, 2016, Plaintiff received a newsletter from Black & Pink, an organization that supports LGBTQ prisoners. Rather than deliver the newsletter to Plaintiff, Defendant Choi intentionally delivered the newsletter to another inmate named Henry, whom Choi knew had an ongoing conflict with Plaintiff. Henry began to harass Plaintiff, and other inmates joined in. Choi later walked around the DTU, showing the Black & Pink newsletter to multiple inmates, saying, among other things, "Look, Bracey gets a fag mag." (*Id.* at ¶ 17). Choi eventually delivered the newsletter to Plaintiff saying, "I didn't know you were into that. Do you suck dick or take it up the ass?" (*Id.* at ¶ 18).
>
> Plaintiff informed Defendants Terra and Banta of the incident and was informed that PREA protocol (*i.e.*, a disciplinary investigation) would be initiated. While the investigation was pending, Plaintiff "continued to be terrorized by DTU guards for his association with the LGBQT community." (*Id.* at ¶ 20). Fellow inmate Gilchrist, who witnessed the mail delivery incident, submitted a declaration as part of the PREA investigation. (*Id.* at ¶ 21). As retaliation for their participation in the investigation, Plaintiff and Gilchrist were harassed by prison guards working

3

"the 2-10 shift." This harassment included additional tampering with Plaintiff's mail, threats of violence, poisoning of food, and the filing of false misconduct reports and negative housing reports. (*Id.* at ¶ 22).

On December 11, 2016, Defendant Baratta told unnamed inmates, "we got Master-Splinter[6] upstairs. Faggot Bracey is filing PREA on everybody." (*Id.* at ¶ 33). In response to Defendant Baratta's comments, Plaintiff, who had been suffering mentally because of ongoing harassment, became "overtly suicidal." (*Id.* at ¶ 34). Plaintiff sought transfer to the psychiatric unit, as was the protocol for a suicidal inmate. Baratta responded to Plaintiff's plea by saying, "Go ahead and kill yourself, faggot." (*Id.*). Plaintiff told Baratta that he would add Baratta to the targets of the PREA investigation, and Baratta responded, "Oh yeah, I got something for that." (*Id.* at ¶ 35). Plaintiff continued to alert staff to his suicidal intentions, but he was not moved from his cell. Shortly thereafter, Plaintiff was served with a "falsified and bogus misconduct" report, written by Baratta, which alleged that Plaintiff had sexually harassed Baratta and spit on him. (*Id.* at ¶ 38). In response to the misconduct report, Plaintiff felt "totally helpless and oppressed," and attempted to hang himself. Prison staff brought Plaintiff down by cutting the noose and rushed him to the medical building and placed him in the psychiatric unit. (*Id.* at ¶¶ 40-41). Plaintiff suffered pain resulting from the suicide attempt that lasted several days. At a later hearing, Plaintiff was found "not guilty" of the misconduct alleged by Baratta. (*Id.* at ¶ 42).

While Plaintiff was in the psychiatric unit, Defendant Andrews assaulted a handcuffed Gilchrist by punching, choking, and dragging him by his handcuffs. (*Id.* at ¶¶ 43-45). Another prison guard, "Taylor," had previously threatened violence against Gilchrist for "riding with Bracey about that fag mag." (*Id.* at ¶ 29). No paperwork was filed regarding this incident, though Gilchrist received physical therapy to rehabilitate his injuries, which include a dislocated shoulder. Gilchrist later declined to participate in the instant civil action. (*Id.* ¶¶ 47-48).

Because of the special nature of the DTU, unit staff are mandated by policy to be vetted, trained, and psychologically evaluated before being assigned to work in the DTU. Though Defendants Link, Banta, Brumfield, Flaime, and Nuñez— who were all partly responsible for ensuring that the DTU was properly staffed— had notice of the importance of proper training and supervision of the DTU staff, they nevertheless assigned staff to the DTU who had not undergone the required psychological evaluations and who, in some cases, had known propensities for violence.

---

[6] Plaintiff defines 'Master Splinter' as an informal term for "rat," or informant, referencing the well-known Teenage Mutant Ninja Turtles character, Master Splinter, who is literally a rat. (*Id.* at 33); (*see* Defendants' motion to dismiss, (ECF 19, at 19)).

4

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11 (citing *Iqbal*, 556 U.S. at 677). The court must determine whether the plaintiff has pled facts sufficient to show a plausible entitlement to relief. *Id.* at 211. If the pled facts only allow the court to infer the mere possibility of misconduct, then the complaint has only alleged, and not shown, that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)). Thus, the plaintiff "must allege facts sufficient to 'nudge [his or her] claims across the line from conceivable to plausible.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

To determine the sufficiency of a complaint, "a court . . . must take three steps," that include (1) taking note of the elements a plaintiff must plead to state a claim; (2) identifying allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth;" and (3) assuming the veracity of all well-pleaded factual allegations and determining "whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679). If the court finds, even after construing the complaint in the light most favorable to the plaintiff, that the plaintiff is not entitled to relief, the court can dismiss the claim. *Fowler*, 578 F.3d at 210.

Complaints and submissions filed by *pro se* litigants are subject to liberal interpretation and are held "'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

5

However, the court must still ensure that a *pro se* complaint contains "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (citing *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

To maintain a cause of action under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also* 42 U.S.C. § 1983. Here, during the relevant period, Plaintiff alleges that Defendants were state employees, working at a Pennsylvania correctional facility and acting within the scope of their employment. This fact is not disputed. In the amended complaint, Plaintiff asserts that particular state employees committed distinct constitutional violations, and identifies the events and individuals as follows: (A) allegations of deliberate indifference against Defendants Baratta and Myers; (B) allegations of retaliation against Defendants Andrews, Baratta, and Choi; (C) allegations against Defendant Choi for other violations of Plaintiff's First and Fourteenth Amendment rights; (D) allegations against Defendants Terra and Banta, in their supervisory capacities, for retaliation and for denial of access to courts; (E) allegations against Defendants Link, Banta, Brumfield, Flaime, and Nuñez for violations of Plaintiff's Eighth Amendment rights by failing to properly train and supervise the DTU staff; and (F) additional claims of violations affecting Gilchrist. Defendants move to dismiss all of Plaintiff's claims.

*A.  Plaintiff's Deliberate Indifference Claims Against Defendants Baratta and Myers*

Plaintiff's primary claims against Defendants Baratta and Myers are premised on allegations of deliberate indifference to the risk(s) facing Plaintiff, including attempting suicide.

Prison officials violate inmates' Eighth Amendment rights when, "acting with deliberate indifference, [they] expose[] a prisoner to a sufficiently substantial 'risk of serious damage to his future health[.]'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Deliberate indifference requires that a defendant "'knows of and disregards an excessive risk to an inmate's health or safety.'" *Dominguez v. Governor of Pa.*, 574 F. App'x 63, 65-66 (3d Cir. 2014) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)). In prison-suicide cases, for example, plaintiffs "bear the burden of establishing three elements: '(1) the detainee had a particular vulnerability to suicide, (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers acted with reckless indifference to the detainee's particular vulnerability.'" *Green v. Coleman*, 575 F. App'x 44, 48 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)). Further, a plaintiff's announcement of an intent to kill him or herself indicates a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Hinton v. Mark*, 544 F. App'x 75, 77 (3d Cir. 2013) (quoting *Colburn*, 946 F.2d at 1024).

Here, Plaintiff alleges that he informed Defendant Baratta that he "felt mentally unsafe in his cell" and requested to be transferred to "psychiatric unit cells for his safety as he was directed to do . . . when becoming suicidal." (Am. Compl. ¶ 34). Baratta allegedly responded, "Go ahead and kill yourself, faggot." Plaintiff alleges that he "continued to make known he was feeling suicidal," and that "Defendant Myers was made aware," yet Plaintiff was "ignored and left in his cell." (*Id.* at ¶ 36). After being served with Defendant Baratta's "falsified and bogus misconduct," Plaintiff was distraught and attempted to hang himself. This Court finds that at this stage of the proceedings, these assertions, when considered with the fact that Plaintiff was housed in a special unit for prisoners who required serious mental health intervention and treatment, are sufficient to

state an Eighth Amendment deliberate indifference claim against Defendants Baratta and Myers. Accordingly, Defendants' motion is denied with respect to those claims.

Plaintiff further alleges that Defendant Baratta publicly referred to Plaintiff as a "Master-Splinter," as noted, a "rat," and that this particular form of name-calling constitutes a separate deliberate indifference claim. Defendant Baratta allegedly made this reference in the context of Plaintiff "filing PREA on everybody." Defendants argue that "it is unknown whether a correctional officer such as Baratta would reasonably expect the term 'Master-Splinter' to be viewed by other inmates the same way the terms 'rat' or 'snitch' would," as the cartoon character by that name "is a literal rat, rather than . . . a so-called 'snitch.'"

Defendants' argument lacks merit, however, considering that Baratta referenced a rat character in the same sentence as announcements about Plaintiff's filing of PREA complaints. In the context of referring to a prisoner as a "rat" or "snitch," deliberate indifference can be shown when the comment knowingly exposes a prisoner to a "substantial risk of serious harm." *Farmer*, 511 U.S. at 828. Undoubtedly, as Defendants acknowledge, "rat" is a "dangerous label in the prison setting." (*See* Am. Compl. ¶ 33); *see also Miller v. Leathers*, 913 F.2d 1085, 1088 n.* (4th Cir. 1990) ("It is impossible to minimize the possible consequences to a prisoner of being labelled [sic] a 'snitch'"). Accordingly, "district courts in this Third Circuit have found that the mere act of labeling a prisoner a snitch constitutes a substantial risk of harm." *Williams v. Thomas*, 2013 WL 1795578, at *6 (E.D. Pa. Apr. 29, 2013) (collecting cases). In this Court's opinion, the same risk exists for labeling someone a rat.

While the *Farmer* standard requires a prisoner to show, in addition to existence of a risk, that a defendant actually "draw[s] the inference" of the risk, the *Farmer* court also observed that "a factfinder may conclude that the official knew of a substantial risk from the very fact that it was

8

obvious." 511 U.S. at 842. For this reason, a prisoner complaint may survive a motion to dismiss without alleging more than the mere fact that a prison guard referred to the prisoner as a snitch in the presence of other inmates. *See Woolfolk v. Meier*, 2018 WL 1773397, at *3 (E.D. Pa. Apr. 12, 2018) (rejecting defendants' argument that prison official's "comment in front of other inmates that [the plaintiff] was a 'snitch' [was] insufficient to state a constitutional claim"); *Williams*, 2013 WL 1795578 (denying motion to dismiss claims that prison employees who referred to the plaintiff as a snitch in front of other inmates were deliberately indifferent to a substantial risk of serious harm); *see also Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (holding that prison officials referring to an inmate as a snitch satisfies the *Farmer* standard). Accordingly, this Court finds that Plaintiff has alleged sufficient facts to support a deliberate indifference claim against Defendant Baratta. Consequently, Defendants' motion is denied with respect to this claim.

## B. *Plaintiff's Retaliation Claims Against Defendants Baratta and Andrews*

Plaintiff next alleges that Defendants Baratta and Andrews retaliated against Plaintiff in response to his filing of the PREA complaint against Defendant Choi in violation of Plaintiff's First Amendment rights. "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (internal quotations omitted). A prisoner-plaintiff satisfies the "adverse action" element by showing that the action "'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah*, 229 F.3d at 225). Whether conduct constitutes an adverse action "is an objective inquiry and ultimately

a question of fact." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (citing *Rauser*, 241 F.3d at 333). An adverse action "'need not be great in order to be actionable[;]' rather, it need only be 'more than de minimis.'" *Id.* at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). To meet the "causation" element of a retaliation claim, a plaintiff may rely on facts showing "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

With respect to the allegations against Defendants Baratta and Andrews, Plaintiff asserts that each retaliated against him for initiating and pursuing the PREA investigation into Choi's intentional mis-delivery of the newsletter. The filing of a grievance against a corrections officer is an activity protected by the First Amendment. *Watson*, 834 F.3d at 422 (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). Thus, Plaintiff has pled facts sufficient to meet the first element of a retaliation claim.

As to Defendant Andrews, Plaintiff further asserts that Defendant Andrews "physically attacked and pummeled Plaintiff's main witness, Gilchrist . . . to deter him from further involvement" in the PREA investigation. (Am. Compl. ¶ 52). Plaintiff contends that this assault "greatly obstructs Plaintiff's ability to prosecute this action . . . constituting 'adverse action.'" *Id.* This Court finds that the loss of a third party's participation in future litigation does not constitute an "adverse action" for the purposes of a retaliation claim. Moreover, Plaintiff has failed to allege facts to support any inference that Andrews' attack on Gilchrist was motivated by *Plaintiff's* initiation of, or involvement with, the PREA investigation. Instead, Plaintiff has specifically alleged that "Andrews approached Gilchrist harassing and confronting Gilchrist as to *his*

10

involvement in the investigation, demanding him to cease in *his* participation." (Am. Compl. ¶ 44). There is simply no indication in the amended complaint that Andrews' attack on Gilchrist was motivated by Plaintiff's speech, rather than by Gilchrist's speech. Thus, this Court finds that Plaintiff has failed to plead facts sufficient to meet either the second or the third elements of a retaliation claim against Andrews. Defendants' motion is granted with respect to this claim.

Unlike the allegations against Defendant Andrews, however, Plaintiff's allegations against Defendant Baratta identify conduct directed at Plaintiff, in response to Plaintiff's constitutionally-protected speech. These assertions include, *inter alia*, Baratta's filing of a false misconduct report against Plaintiff and Baratta's insinuation to other inmates that Plaintiff was a "rat." Being falsely charged with a misconduct is an adverse consequence sufficient to state a claim for retaliation, *see Mitchell*, 318 F.3d at 530, as is being publicly referred to as a "snitch." *Miller*, 913 F.2d at 1088 n.\*. Accordingly, this Court finds that Plaintiff has alleged sufficient facts to plausibly support a First Amendment retaliation claim against Baratta. Therefore, Defendants' motion is denied with respect to this claim.

### C. *Plaintiff's Claims Against Defendant Choi*

Plaintiff asserts that Defendant Choi intentionally shared the contents of Plaintiff's non-legal mail with inmates whom Choi knew would be hostile towards Plaintiff because of his LGBTQ identity, and that that would result in Plaintiff's harassment by those inmates. Plaintiff contends that this single event violated his constitutional rights, including, *inter alia*, his First Amendment rights to access the mail, freedom of assembly, his freedom from retaliation for engaging in protected expression, and his Fourteenth Amendment rights to substantive due process and equal protection of the laws.

11

"Inmates have a liberty interest in their mail under the First and Fourteenth Amendments and their ability to send and receive mail may be restricted only for legitimate penological interests." *Nixon v. Wetzel*, 2012 WL 2589887, at *3 (M.D. Pa. July 3, 2012) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). "However, a single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation." *Id.* (citing *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abr. on other grounds*, 518 U.S. 343 (1996)). Here, though Plaintiff contends that "other acts of tampering with Bracey's mail (institutional)," occurred, he only alleges specific facts relating to one incident; *to wit*: Defendant Choi's single interference with Plaintiff's mail. Under these circumstances, Plaintiff's claim does not rise to the level of a constitutional violation.

Plaintiff also contends that Choi's mis-delivery of the newsletter violated his right to "freedom of assembly," guaranteed under the First Amendment. The United States Supreme Court has explained that freedom of assembly and association are protected in two distinct ways:

> First . . . the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities.

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987) (citing *Roberts v. United States Jaycees*, 468 U.S. 609 (1984)). The first right, freedom of "private association," protects against unwarranted State interference with "intimate relationships," such as "marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives . . . that presuppose 'deep attachments and commitments.'" *Id.* at 545. Plaintiff has not alleged any interference with his ability to enter into or maintain any such relationships. The second right, freedom of "expressive association," recognizes "as implicit in the right to engage in activities

protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts*, 468 U.S. at 622. Plaintiff has not alleged that Choi's interference with the delivery of the Black & Pink newsletter frustrated any intent to "engage in group effort" toward any such "ends." *Id.* Consequently, this Court finds that Plaintiff has failed to state a claim for violation of his rights to assemble and/or associate. Accordingly, Defendants' motion is granted with respect to Plaintiff's Frist Amendment freedom of assembly/association claims.

Additionally, Plaintiff contends that Choi's interference with Plaintiff's receipt of the newsletter, and the harassment to which he was subjected as a result, violated Plaintiff's Fourteenth Amendment rights to equal protection and substantive due process. Plaintiff is mistaken. "[E]ven severe verbal harassment typically does not rise to the level of a constitutional violation." *Fanti v. Weinstock*, 629 F. App'x 325, 330 (3d Cir. 2015); *see also Burkholder v. Newton*, 116 F. App'x 358, 360 (3d Cir. 2004) (noting that "it is well established that allegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983.") (citing cases). Plaintiff has alleged no injury besides the interference with his mail and the harassment that resulted. Therefore, this Court finds that Plaintiff has failed to allege a plausible Fourteenth Amendment claim. Defendants' motion is granted with respect to these claims.

Finally, Plaintiff contends that Defendant Choi retaliated against him because of his association with LGBTQ inmate advocates, Black & Pink. "'Government actions, which standing alone do not violate the Constitution, may nevertheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (*en banc*)). Here, Plaintiff has pled sufficient facts to show that Choi's act of

13

revealing and/or highlighting Plaintiff's LGBTQ identity to other inmates known to harbor animus towards LGBTQ individuals may be deemed enough to deter a person of ordinary firmness from continuing to receive publications from selective organizations, such as Black & Pink. As alleged, Choi's actions were also sufficiently sustained and related—both temporally and substantively—to Plaintiff's receipt of the Black & Pink newsletter to successfully plead the causation element of retaliation. This Court finds that Plaintiff has alleged sufficient facts to state a plausible retaliation claim against Choi. Defendants' motion is denied with respect to this claim.

### D. *Plaintiff's Supervisory Capacity Claims Against Defendants Terra and Banta*

Plaintiff alleges that Defendants Terra and Banta, acting in their "supervisory capacities," supported the culture of retaliation that arose in the wake of the PREA investigation and should be held liable for retaliation and denial of access to courts based on actions by officers supervised by Terra and Banta. To be liable under § 1983, a "defendant must be personally involved in the alleged action[.]" *Bonham v. Givens*, 197 F. App'x 148, 150 (3d Cir. 2006) (citing *Rizzo v. Goode*, 423 U.S. 362, 375-77 (1976)). Allegations of a defendant's personal involvement must be made with appropriate particularity, including the particulars of the conduct, time, place, and person responsible. *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005). A defendant may be held liable in his supervisory capacity where a plaintiff alleges sufficient facts to show that a supervisor "'had knowledge of and acquiesced in his subordinates' violations.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

Therefore, Plaintiff must allege facts sufficient to show that the supervisors had knowledge of, and specifically "acquiesced" to, conduct that actually resulted in a constitutional violation. *Id.*

14

at 130. This Court finds that he has not. Though Plaintiff alleges that Defendants Terra and Banta knew of "a campaign of harassment/retaliation" that included, *inter alia,* unspecified "acts of tampering with Bracey's mail, threats of violence, poisoning of food, bogus misconducts, negative housing reports, etc.," (Am. Compl. ¶ 22), Plaintiff has not alleged that Terra and Banta were either personally involved in, or that they specifically acquiesced to, any constitutional violation. To the contrary, when made aware of Plaintiff's complaints, Terra and Banta initiated the PREA protocol investigation of Choi's misconduct. Accordingly, Plaintiff has failed to state a plausible claim against Defendants Terra and Banta. Defendants' motion is granted with respect to these claims.

### E.     *Plaintiff's Failure to Train and/or Protect Claims Against Defendants Link, Banta, Brumfield, Flaime, and Nuñez*

Plaintiff alleges that DTU staff were "mandated by policy to be properly vetted, trained, and psychologically evaluated before being regularly assigned to the DTU," (Am. Compl. ¶ 32); that Defendants Link, Banta, Brumfield, Flaime, and Nuñez were "put on notice" regarding that policy; and that despite the policy, some regular DTU staff were "not made to go through the mandated psychological evaluations" or "crisis intervention team training" which would "enable them the skills to deal with the mentally ill in an humane manner." (Am. Compl. ¶ 32). Plaintiff asserts that these failures to comply with the training requirements policy "caused a hostile environment in the DTU with a foreseeable risk of harm." *Id.* It appears that these contentions are an attempt to state a claim under either a "failure to train" or a "failure to protect" theory.

"A supervising authority may be liable under § 1983 for failing to train . . . when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact." *Gilles v. Davis,* 427 F.3d 197, 207 n.7 (3d Cir. 2005) (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). "But to establish liability on a failure to train claim

15

under § 1983, plaintiffs 'must identify a failure to provide specific training that has a *causal nexus* with their injuries and must demonstrate that the absence of that training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Id.* (quoting *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

To state an Eighth Amendment failure to protect claim, a plaintiff must plead facts sufficient to show: (1) that a substantial risk of serious harm exists, and (2) that the prison officials have a "sufficiently culpable state of mind." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 838). "The inmate must show that the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* That is, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.*

Here, though Plaintiff has alleged that Defendants Link, Banta, Brumfield, Flaime, and Nuñez were "on notice" as to the training requirements for DTU staff, he alleges no facts to support any conclusion that these Defendants knew or should have known that assigning improperly-trained officers to the DTU created a substantial risk of any kind of "serious harm," or that they had sufficiently culpable states of mind. Moreover, there is no allegation that establishes that said Defendants should have known that failing to follow the training policy would create a risk of *the kind of* serious harm that Plaintiff allegedly suffered. Accordingly, this Court finds that Plaintiff has failed to plead sufficient facts to state a claim against Defendants Link, Banta, Brumfield, Flaime, and Nuñez for failing to assign staff in accordance with DTU training requirements. Therefore, Defendants' motion is granted with respect to these claims.

F.  *Additional Claims Involving Gilchrist*

Plaintiff alleges that the retaliation against Gilchrist (primarily by Defendants Andrews and Myers) caused Gilchrist to withdraw his participation in this civil action, depriving Plaintiff of his "main witness," which "greatly obstructs Plaintiff's ability to effectively prosecute his claims." The Supreme Court held in *Bounds v. Smith*, 430 U.S. 817 (1977), that the right of access to the courts is fundamental and guaranteed by the Fourteenth Amendment, and that the denial of this right is actionable under § 1983. *Zilich v. Lucht*, 981 F.2d 694, 694-95 (3d Cir. 1992) (citing *Bounds*, 430 U.S. at 828). However, "a prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis*, 518 U.S. 343, 350 (1996)). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Here, Plaintiff has not alleged, nor can he, that he has lost any nonfrivolous, arguable claims because of any of Defendants' alleged conduct. Plaintiff has filed his complaint and a subsequent amended complaint. Should Gilchrist wish to participate, there is no reason why he would not be able to do so. As pled, Plaintiff has not alleged that he has suffered any "actual injury." Therefore, Defendants' motion is granted with respect to Plaintiff's claims of denial of access to the courts.

Plaintiff also asserts that Defendant Myers knew of Defendant Andrews' alleged attack on Gilchrist and conspired with Andrews to "conceal and cover-up the retaliatory attack" by declining to report it. Plaintiff contends that by these acts, Defendant Myers violated Plaintiff's First Amendment rights. Plaintiff, however, is misguided. Nowhere in the amended complaint has Plaintiff alleged that Myers took any specific action against Plaintiff or shown any causal link between Myers' conduct and Plaintiff's engagement in any constitutionally-protected activity.

17

Accordingly, this Court finds that this claim fails. Defendants' motion is granted with respect to Plaintiff's retaliation claim against Defendant Myers.

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss the amended complaint is granted, *in part*, and denied, *in part*. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.